E. IL. Ewing, special J.,
delivered the opinion of the court.
In 1845, the heir's of one Horn filed their petition, in the chancery court at Lebanon, for the sale of two tracts of land, of which they were tenants in common. The object of the sale was partition. One of the tracts of land, and the one about which the controversy in this case arises, is described in the petition as: “ about 172 acres,” and as the remainder of the tract on which the-ancestor of petitioners died, after deducting the widow’s *131 dower, of 124 acres. Upon bearing the petition, the usual reference was made to the master to report as to the propriety of the sale, and also to take proof and report the value of the land per acre. The master did take proof as to the value of the land, and reported that a sale would be proper, but did not report as to the value of the land. The proof made the land worth ten dollars an acre, on a credit of one and two years. A sale was ordered and $he land sold by the master in 1845. At this sale the defendant Denton became the purchaser of the 172 acre tract of land at $1,826, and executed his notes for the purchase money at one and two years. At the January term, 1846, of said court, the sale was confirmed without objection.
The defendant paid the purchase money slowly, and did not make his last payment until January, 1852. Soon after he had made his last payment, defendant, with a view to a final decree, had the land surveyed, when it was discovered that the tract of land contained really 1914 acres, or 194- acres more than 172 acres, the supposed quantity. Upon this discovery, and before any final decree divesting title, the heirs of Horn filed their supplemental petition to have pay for this additional 194 acres of land, or to set aside the sale at Denton’s option.
This supplemental petition alleges that the sale was by the acre, and that there was a mistake as to the quantity of land by both parties; that some of the petitioners were minors and some married women at the sale, and that the minors continued such until very shortly before the filing of the second petition. That the discovery as to the additional quantity of land was *132 not made until Denton’s survey in 1852. Denton an» swers this supplemental petition, and denies that the sale was by the acre, and insists that it was a sale in gross, and that the master in fact sold it, as more or less. Proof was taken under this second petition, and it appeared that the sale was not by the acre, though there seems to have been an impression among bidders that ten dollars an acre was the minimum price fixed by the decree. Some , of the petitioners were minors and some married women at the date of the sale. The minors became adult but a short time before the filing of the second petition, and the married women continue in that state still. The chancellor dismissed the supplemental petition and decreed the land to defendant.
It is urged before this court for petitioners, that there was a mistake as to the quantity of the land and that such a mistake can be corrected, either before or after the confirmation of the sale, if the application be made before final decree divesting title. On the other hand, it is argued that there was no mistake; that it was a sale where the purchaser as well as the vendor, not knowing the exact quantity of land, chose to take the risk. And it is further said for the purchaser, that if relief could have been given at all, it must have been upon application made before the confirmation of the sale.
That judicial sales after confirmation can be impeached only upon the same ■ grounds as private sales: and finally, that in this case acquiescence from length of time, is to be added to other reasons against disturbing the sale.
*133 The authorities cited to sustain the position of defendant have been examined by the court, and they certainly do sustain the position, that where a private sale of land is made in gross and not by the acre, a subsequent discovery that both parties were mistaken in their opinions will not avail to set aside the contract, unless the mistake was very gross. In such a case indeed mistake is not predicable of the contract for the parties agree to risk their judgments as to price and quantity of land. A very gross mistake might evince such want of judgment, as to let in a court of chancery on another ground. The authorities referred to, also, place judicial sales after confirmation, under very much the same rules as to their binding effect as private contracts. The difficulty here is, however, that this sale was made for persons, some of whom were not sui juris / some infants and some married women.
No analogy can, therefore, be run, between this sale and that of a contract between private individuals. If these persons had been dealing privately, they could not have given a title bond of any description that would have bound them, but certainly they could not have given one for their land in gross, that would have been specifically decreed against them, where it appeared they were only to be paid for 172 acres and were to convey 191-|. And is not a confirmed sale, analogous to a title bond? In each case the title is withheld only to have the purchase money paid.
It may be said, however, that the clerk and master was the agent of the petitioners and could bind them, and that he did bind them by a sale of their land in gross and not by the acre.
*134 And that it is the very object of judicial sales of this description to have a representative who may bind infants and married women. To a certain extent, this is true. But to what extent is it true so far as this case is concerned? The laws, which authorize the sale of the lands of deceased persons and tenants in common for partition or division, do not authorize the mating of hazardous or speculative bargains in such sales. Nothing is to be sold but what the parties own, and all that they do own, is to be sold and paid for.
The master’s duty was either to have sold the land by the acre, or to have known the number of acres accurately;, and have received bids for the whole amount.
He had no authority to sell the land as more or less, at any rate, unless this expression was to embrace some very insignificant amount, such as might arise from difference in surveys, &c. There was no mistake in this case really. There was rather a neglect of duty on the part of the clerk and master, who, instead of reporting that he had sold “the tract of 172 acres for so much,” thereby assuming its quantity, concealed from the chancellor,' that he had not sold by the acre. Had all the petitioners been sui juris, the confirmation of the report, and acquiescence under it, might have been construed into an assent by the petitioners to the action of the master, which would have hound them. These considerations can have no effect against the minors and married women. The best that can be done for the defendant under the circumstances, is to allow him to pay for the surplus of 19-£ acres of land, at the same rate at which he paid for the 172 acres, with interest on one-half after one year, and on the *135 other half after two years from the date of the sale.
The decree of the chancellor will be reversed, and a decree be entered in accordance with this opinion, vesting defendant with the title to the whole of the land, subject to a lien for the price of the 19£ acres and interest, which must be paid before the nest session of this court.
The costs to be divided.